UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-465-GW(GJSx) | Date | March 23, 2017 |
| Title | *Nichole Kelly v. T-Mobile USA, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

    Christian J. Petronelli                                   Elizabeth C. Nguyen
    Julia M. Damron

**PROCEEDINGS:**     **PLAINTIFF'S MOTION TO REMAND [11];**

                    **SCHEDULING CONFERENCE**

The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is DENIED.

The Court sets the following:

| | |
|---|---|
| Mediation cutoff | August 4, 2017 |
| Post-Mediation Status Conference | August 7, 2017 at 8:30 a.m. |
| Discovery cutoff | October 2, 2017 |
| Expert discovery cutoff | November 3, 2017 |
| Motion hearing cutoff | December 4, 2017 |
| Pretrial Conference | January 4, 2018 at 8:30 a.m. |
| Jury Trial | January 16, 2018 at 9:00 a.m. |

The parties are referred to ADR Procedure No. 1 - Magistrate Judge.

**cc: ADR Program**

                                                                                                                                        :  02

                                            Initials of Preparer     JG

<u>*Kelly v. T-Mobile USA, Inc.*</u>, Case No. CV-17-0465-GW (GJSx)
Tentative Ruling on Plaintiff's Motion to Remand

# I. <u>Background</u>

Nichole Kelly ("Plaintiff") sues T-Mobile USA, Inc. ("Defendant") for (1) disability discrimination in violation of California Government Code § 12940(a); (2) failure to provide reasonable accommodations in violation of California Government Code § 12940(m); (3) failure to provide a timely, good faith interactive process in violation of California Government Code § 12940(h); (4) retaliation in violation of California Government Code § 12940(h); (5) wrongful termination in violation of California Government Code § 12940(a); (6) retaliation and wrongful termination in violation of public policy; (7) failure to prevent discrimination, harassment, and retaliation in violation of California Government Code § 12940(k); and (8) intentional infliction of emotional distress. *See* Compl., Docket No. 1-1.

Defendant is a nationwide cellular telephone and wireless services provider and retailer with stores and offices throughout California. *Id.* ¶ 14. Plaintiff was employed by Defendant from November 2004 until July 6, 2016. *Id.* ¶ 15. While employed by Defendant, Plaintiff alleges that she received good performance evaluations and was promoted on several occasions. *Id.* ¶¶ 16-19.

On June 2, 2014, Plaintiff was injured in an automobile accident and suffered a severe injury to her back, which causes Plaintiff to experience significant back pain. *Id.* ¶ 19. As a result, Plaintiff took disability/medical leave from June 2014 through September 2014 in order to recover from her injuries. *Id.* ¶ 20. On September 8, 2014, Plaintiff returned to work at Defendant's office in Irvine, but, pursuant to a note from her doctor, was only permitted to work four hours per day. *Id.* ¶ 21. Thereafter, on October 9, 2014, Plaintiff's doctor signed a new note stating that Plaintiff was only permitted to work from home, not to exceed six hours per day. *Id.* ¶ 22. On November 6, 2014, Plaintiff's doctor raised the maximum number of hours that Plaintiff could work to 8 hours per day. *Id.* Plaintiff alleges that other employees of Defendant work remotely or from home during at least a portion of their work week, and that Plaintiff had been permitted to work from home prior to her disability. *Id.* ¶ 23.

On July 29, 2015, Defendant's Human Resources ("HR") Manager notified Plaintiff via email that she was required to submit updated medical documentation in order to continue to

work from home. *Id.* ¶ 24. Plaintiff alleges that she provided HR with the required documentation on August 18, 2015, which stated that she was required to work from home for one additional month. *Id.* ¶ 25. On August 28, 2015, Plaintiff received an email from HR stating that HR had sent the required paperwork directly to Plaintiff's doctor, which the doctor would need to fill out and return within four business days or Plaintiff's request to continue working from home would be denied. *Id.*

Plaintiff alleges that her doctor sent the completed paperwork to HR on August 31, 2015, but that HR claimed it did not receive the paperwork, which caused Plaintiff to become anxious and fearful that her accommodation would not be approved. *Id.* ¶ 29. However, the following day, HR informed Plaintiff it had received the paperwork. *Id.*

Plaintiff alleges that on September 7, 2015, Plaintiff received correspondence from her supervisor around 7:52 pm indicating that Plaintiff's request to continue working from home had been denied and that Plaintiff was required to report to the Irvine office the next morning. *Id.* ¶ 30. Plaintiff reported for work the next morning, and as a result alleges that she suffered additional injury, including extreme back pain. *Id.* ¶ 31. Plaintiff alleges that due to Defendant's refusal to grant her request to continue working from home, Plaintiff was forced to again go to her doctor, who placed her on disability leave. *Id.* ¶ 33. Plaintiff was on disability leave from September 8, 2015 to November 22, 2015. *Id.*

While Plaintiff was on leave, Plaintiff's medical benefits were allegedly terminated by Defendant. *Id.* ¶ 35. On November 23, 2015, Plaintiff attempted to return from leave and resume working from home. *Id.* ¶ 35. However, Defendant informed her that she could not return to work without the approval of John Mavers, an HR vice president. *Id.* ¶ 36. Plaintiff contacted Mavers, who requested additional information from Plaintiff's doctor by December 1, 2016. *Id.* ¶ 36. Due to the short time frame to provide the requested paperwork, Plaintiff alleges that she consulted with a new doctor, who provided HR with the completed paperwork. *Id.* ¶ 38. However, Plaintiff alleges that the doctor accidentally checked "no" on the portion of the form asking whether Plaintiff's condition limited "major life activity." *Id.* ¶ 38. As a result, Defendant rejected the paperwork and provided Plaintiff an extremely short deadline to obtain a new doctor's note. *Id.* ¶ 39. On December 4, 2015, Plaintiff provided HR with a new doctor's note, which recommended that Plaintiff be placed on disability leave from November 25, 2015 to January 3, 2016. *Id.* ¶ 40. On December 24, 2016, Plaintiff provided HR with a revised letter

stating that Plaintiff needed to remain on leave until January 20, 2016. *Id.*

On January 12, 2016, Plaintiff alleges that she received a letter form Defendant informing her that Defendant could accommodate her by providing a standing desk for her work station at the Irvine office. *Id.* ¶ 41. However, Plaintiff alleges that this accommodation did not comply with her medical documentation, which stated that she could only sit or stand for a maximum of 60 minutes. *Id.* ¶ 41.

On February 9, 2016, Defendant allegedly threatened to terminate Plaintiff's employment on the grounds that she had failed to engage in the interactive process because her doctor had failed to produce additional documentation within Defendant's deadlines. *Id.* ¶ 42. Throughout February and March 2016, Defendant continued to send emails threatening to terminate Plaintiff's employment if she failed to complete additional documentation. *Id.* ¶ 43.

Plaintiff alleges that on March 3, 2016, her doctor informed Plaintiff that she could return to work as long as she was provided with a standing desk, with a maximum standing time of three hours per day and a maximum sitting time of three hours per day. *Id.* ¶ 44. However, when Plaintiff returned to work on March 7, 2016, she alleges that her workstation did not have a standing desk, which Defendant had represented that it would provide. *Id.* ¶ 45. As a result, she alleges that she suffered extreme back pain and was hospitalized on March 14, 2016. *Id.* ¶¶ 45-46. Plaintiff alleges that thereafter, Defendant repeatedly refused to allow her to work from home despite additional paperwork provided by her doctors. *Id.* ¶¶ 49-50. Plaintiff alleges that an MRI taken on May 5, 2016 indicated that her disability had worsened. *Id.* ¶ 54. Plaintiff thereafter requested continuous leave on May 9, 2016, which Defendant approved. *Id.* ¶ 54.

On June 27, 2016, Plaintiff received a call from Defendant informing her that she was being terminated. *Id.* ¶ 58. Defendant allegedly informed Plaintiff that it had provided reasonable accommodations to her, which had not helped Plaintiff, and that "nothing would help her." *Id.* ¶ 58.

Plaintiff seeks (1) actual damages, including loss of past and future earnings; (2) general and special damages, including but not limited to pain and suffering, emotional distress, and loss of reputation; (3) consequential and incidental damages and expenses; (4) attorneys' fees and costs; (5) penalties provided by law; (6) damages for financial losses, medical bills, and emotional distress damages; (7) injunctive relief; (8) pre- and post-judgement interest; and (9) such other relief as the Court deems just and proper. *Id.*at 26:2-27:1.

On January 19, 2017, Defendant removed the instant action to this Court based on diversity jurisdiction.  *See* Notice of Removal, Docket No. 1.  Now pending before the Court is Plaintiff's Motion to Remand.  *See* Mot. to Remand ("Mot."), Docket No. 11.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction," and have subject matter jurisdiction only to the extent "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137 (1992); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).  The removal statute is strictly construed against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985); *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

To invoke diversity jurisdiction, the party asserting jurisdiction must establish that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (citations omitted).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957)).  A person's domicile is the place he or she physically resides with intent to make it a fixed and permanent home, while residence means living in a particular locality.  *See id.* (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)).

For diversity purposes, a corporation is a "citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The phrase "principal place of business" means the place where a corporation's board and high level officers direct, control and coordinate its activities, also referred to as its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010).

"In practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direct, control, and coordination." *Id.* at 93.

Where "the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $75,000." *Kroske v. U.S. Bank Corp.*, 432 F.3d 876, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006) (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997)). "The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract." *Id.* (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)).

### III.  Analysis

The parties do not dispute that diversity of citizenship exists.[1] Rather, Plaintiff moves to remand on the grounds that Defendant has failed to establish by a preponderance of the evidence that the $75,000 amount in controversy requirement is met.

The Notice of Removal delineates the following estimate of Plaintiff's requested relief:

- Plaintiff's request for back wages since her termination on July 6, 2016: approximately six months of wages totaling $58,844.  This number is derived utilizing Plaintiff's 2015 salary, which amounted to $117,689.
- Plaintiff's request for emotional distress damages: approximately $25,000.  This amount is based on Ninth Circuit case law upholding a lower court's estimation that a plaintiff's emotional distress damages would amount to at least $25,000 where the plaintiff sought approximately $55,000 in back wages.  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert denied*, 127 S.Ct. 157 (2006).
- Plaintiff's request for punitive damages: unknown, but would certainly increase total amount.
- Plaintiff's request for attorneys' fees and costs: unknown, but likely between 25 to 30% of total damages or settlement, in line with similar California class actions.

*See* Notice of Removal ¶¶ 20-24.  Based on these amounts, Defendant estimates that Plaintiff's claims for back wages and emotional distress damages alone amount to at least $83,844, which will be significantly higher once punitive damages and attorneys' fees are added, and therefore

---

[1] As alleged in Defendant's Notice of Removal, Plaintiff is a citizen and resident of California.  *See* Notice of Removal ¶ 12.  Defendant is a Delaware corporation with its principal place of business in Bellevue, Washington.  *Id.* ¶¶ 15-16.

contends that the amount in controversy is met. *Id.*

Plaintiff contests each of the amounts proffered by Defendant. *See* Mot. at 6:11-18. With respect to back pay, Plaintiff asserts that Defendant failed to reduce its estimate of back pay wages by amounts Plaintiff obtained through mitigation, including Plaintiff's receipt of disability benefits. *Id.* at 6:20-7:7. However, this argument appears to be misplaced as Plaintiff does not allege that she received any disability benefits following her termination on July 6, 2016. Nor does Plaintiff proffer any specific amount that she received after her termination that she believes should be subtracted from the back wages estimate. *Cf. Melendez v. HMS Host Family Rests., Inc.*, No. CV 11-3842 ODW (CWx), 2011 WL 3760058, *2 (C.D. Cal. Aug. 25, 2011) (reducing amount of back wages by amount of disability benefits the plaintiff received during the same time frame). Plaintiff also argues that in utilizing her 2015 salary to calculate her back wages for the past 6 months, Defendant incorrectly included her discretionary 2015 performance bonus, which totaled $9,634.90. *Id.* at 7:8-26. Plaintiff argues that a bonus may only be considered for purposes of estimating the amount in controversy where it can be established with reasonable certainty that the employer would have provided the bonus. *Id.* Plaintiff contends that once Plaintiff's 2015 bonus is subtracted from the $117,689.04 she made in 2015, the most Plaintiff could receive in back pay wages is $47,958.28, which Plaintiff contends "substantially reduces Defendant's [estimated] amount of $58,844." *Id.* at 7:17-8:3. However, as discussed *infra*, even assuming Plaintiff's estimate is used, the Court would find that the amount in controversy is met.

With respect to emotional distress damages, Plaintiff contends that Defendant has failed to provide evidence of analogous emotional distress awards. *See* Mot. at 8:21-9:20. Emotional distress damages "must be considered" in the amount in controversy analysis. *See Cain v. Hartford Life & Acc. Ins. Co.*, 890 F.Supp.2d 1246, 1250 (C.D. Cal. 2012). "To establish the amount of emotional distress in controversy, a defendant may introduce evidence of jury verdicts in other cases." *Id.* (citing *Rivera v. Costco Wholesale Corp.*, No. C-08-02202 CW, 2008 WL 2740399, *4 (N.D. Cal. 2008)).

The Notice of Removal cites to *Kroske*, in which the Ninth Circuit held that a Washington district court properly considered emotional damage awards in similar age discrimination cases in Washington to conclude that a plaintiff's emotional distress damages would add at least $25,000 to her claim. *See* 432 F.3d at 980. Plaintiff contends that *Kroske* is not analogous to the instant case because it did not involve a disability discrimination claim. *See*

Mot. at 9:1-20. In response, Defendant points out that both *Kroske* and the instant action are employment discrimination lawsuits, and also points out that it is "common knowledge that cases decided in California demonstrate that awards for emotional distress damages, particularly in the employment context, can be substantial." *See* Opp'n to Mot. ("Opp'n") at 7:2-8:14, Docket No. 14. Defendant also provides citations to numerous California cases awarding emotional distress damages in employment discrimination cases in amounts ranging from $11,280 (where back pay wages were only $20,279) up to $3 million. *Id.* In light of these cases, the Court would agree with Defendant that a $25,000 estimate is reasonable under the circumstances.[2]

In addition, Plaintiff contends that Defendant has failed to provide case law establishing the potential amount of punitive damages. *See* Mot. at 9:12-24. However, even using Plaintiff's estimate of back pay damages of $47,958.28, along with Defendant's estimate of $25,000 in emotional distress damages, the total amount in controversy is $72,958.28. Once attorneys' fees and costs are added – indeed, Plaintiff herself estimates that attorney's fees are currently $3,395.50 – the $75,000 threshold is met. *See* Mot. at 10:11-16. Moreover, as Defendant points out, punitive damages (which Plaintiff seeks) in disability discrimination cases are quite often substantial. *See Roby v. McKesson Corp.*, 47 Cal.4th 686 (2009) (awarding punitive damages in the amount of $1,905,000); *McGee v. Tucoemas Fed. Credit Union*, 153 Cal.App.4th 1351 (2007) ( affirming punitive damage award of $1.2 million); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1033 (N.D. Cal. 2002) (although amount sought in punitive damages was unclear, jury verdicts from other cases established "the potential for large punitive damage awards in employment discrimination cases").

In light of the above estimates, the Court would find that Defendant has established by a preponderance of the evidence that the amount in controversy is met. *See Simmons*, 209 F.Supp.2d at 1031-35 (finding amount in controversy in employment discrimination case met where the plaintiff's lost wages were approximately $25,000, the plaintiff sought an unknown amount in punitive and emotional distress damages, which would likely be substantial, and also

---

[2] Moreover, Plaintiff has not directed the Court to any cases awarding a lower amount, or offered any indication what her emotional distress damages would be. *See Patel v. Nike Retail Servs., Inc.*, No. 14-CV-0851-JST, 2014 WL 3611096, *7 (N.D. Cal. July 21, 2014) ("Plaintiff cannot simply sit silent and take refuge in the fact that it is [d]efendant's burden to establish the grounds for federal jurisdiction. This is especially the case since the knowledge in question . . . is uniquely within [p]laintiff's possession."); *Navarro v. Servisair, LLC*, No. C08-02716, 2008 WL 3842984, *9 (N.D. Cal. Aug. 14, 2008) ("Although plaintiff claims defendant simply invents number in order to meet the amount in controversy requirement, he offers no alternative . . . . Plaintiff cannot have his cake and eat it too.").

sought attorneys' fees and costs); *see also Vasquez v. Arvato Digital Servs., LLC*, CV 11-0236 RSWL (AJWx), 2011 WL 2560261, at *3-4 (C.D. Cal. July 27, 2011) (amount in controversy met where plaintiff's lost wages amounted to approximately $25,000 and the plaintiff also sought unspecified punitive and emotional distress damages that would likely be substantial, as well as attorneys' fees and costs); *Chambers v. Penske Truck Leasing Corp.*, No. 11-CV-00381 LJO GSA, 2011 WL 1459155, at *3-4 (E.D. Cal. Apr. 15, 2011) (amount in controversy met where plaintiff sought lost wages and benefits in an excess of $25,000, as well as unspecified attorneys' fees and emotional distress and punitive damages that would likely be substantial).

## IV. Conclusion

In sum, the Court would DENY Plaintiff's Motion to Remand.